UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| POET, LLC, POET RESEARCH, INC., and POET PLANT MANAGEMENT, LLC, | CIV 17-4029 |
| Plaintiffs, | |
| vs. | POST-HEARING ORDER |
| NELSON ENGINEERING, INC., JERRY BAKER, KEVIN HOWES, and HOMELAND ENERGY SOLUTIONS, LLC. | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs, POET, LLC, POET Research, Inc., and POET Plant Management (collectively, "POET"), brought this action for injunctive relief and damages against two of its former employees, Jerry Baker (Baker) and Kevin Howes (Howes), and the businesses the men joined some time after they left POET, Nelson Engineering, Inc. (NEI) and Homeland Energy Solutions, LLC (Homeland) (collectively, the "Defendants"). Baker and NEI counterclaimed against POET, seeking declaratory relief and damages. Pursuant to Federal Rule of Civil Procedure 56, POET (doc. 80), Baker and NEI (doc. 79), and Howes and Homeland (doc. 91) all move for summary judgment on various claims. The parties also filed a number of additional motions.

At a hearing on May 31, 2019, the Court heard argument on the motions. Appearing on behalf of POET were Tara Norgard, Alexandra Olson, Jamie Hendrickson, Sander Morehead and Marty Jackley. Mitchell Peterson and Shane Eden appeared on behalf of Baker and NEI. Representing Howes and Homeland were Alexander Johnson and Tyler Haigh.

## BACKGROUND

POET commenced this lawsuit against Baker and NEI after learning NEI was marketing a process called Hydrolysis Utilization ("HU") to address the volume drop and additional headspace in fermentors caused by the release of carbon dioxide. POET later amended its complaint to add Howes and Homeland as defendants. POET claims that Baker and Howes misappropriated trade secrets and confidential information, including but not limited to POET's Delayed Dilution ("DD") technology, and used those to develop HU which POET contends is exactly the same as POET's DD.

POET alleges that (1) all Defendants violated the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*; (2) all Defendants violated the South Dakota Uniform Trade Secret Act, SDCL 37-29, the Iowa Uniform Trade Secret Act, IA Code 550.2-.4, and the Minnesota Uniform Trade Secret Act, Minn. Stat. 325C.01-.03; (3) Baker breached a confidentiality agreement with POET; (4) Baker breached a duty of loyalty to POET; (5) NEI tortiously interfered with the confidentiality agreements between POET and Baker and Howes; (6) Howes breached a confidentiality and a non-compete agreement with POET; (7) Howes breached a duty of loyalty to POET; (8) Homeland tortiously interfered with the confidentiality agreement between Howes and POET. (Doc. 45.)

Defendants Baker and NEI filed an amended counterclaim against POET for defamation, tortious interference with business relationships, tortious interference with NEI's contractual rights with Glacial Lakes Energy, and declaratory relief. (Doc. 21.)

POET moves for summary judgment on the breach of contract claims against Baker and Howes and the tortious interference claims against NEI and Homeland. POET also requests summary judgment on Baker and NEI's counterclaim alleging that POET tortiously interfered with NEI's contract with Glacial Lakes Energy. Baker and NEI do not object to summary judgment in favor of POET on the counterclaim for tortious interference with the Glacial Lakes Energy contract.

Baker and NEI move for summary judgment on POET's misappropriation of trade secrets claims under both federal and state law. Baker requests summary judgment on POET's breach of

contract and breach of duty of loyalty claims against him. NEI asks for summary judgment on POET's claim that it tortiously interfered with Baker's contract with POET.

Howes moves for summary judgment on the portion of POET's breach of contract claim alleging he breached a noncompete agreement. Howes and Homeland also ask for summary judgment on POET's claim that Homeland was unjustly enriched.

## DISCUSSION

**I. Baker and NEI's motion for summary judgment on POET's misappropriation of trade secrets claims under both federal and state law is denied.**

Baker and NEI argue that POET has failed to sufficiently describe what the trade secret is as a matter of law. POET asserts that their trade secret is a process of combined elements, that they have sufficiently described it and, at a minimum, there is a fact dispute about whether a trade secret exists, together with other factual disputes on material issues. Viewing the record in the light most favorable to POET, for the reasons stated at the hearing on May 31, the Court finds that fact questions exist and that Baker and NEI are not entitled to summary judgment on the misappropriation of trade secrets claims.

**II. Is the Issue Whether a Trade Secret Exists a Question of Law for the Court?**

At the hearing, the Court cited *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011). There, the Eighth Circuit stated, "Though the existence of a trade secret is a fact-intensive inquiry, it is ultimately a question of law determined by the court." *Id.* at 971 (citing *Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165, 179 (Ind. Ct. App.2007); *Lyn-Flex West, Inc. v. Dieckhaus*, 24 S.W.3d 693, 698 (Mo. Ct. App.1999)). In a 2014 decision, the Eighth Circuit reviewed the issue "whether the jury correctly found that Hallmark's PowerPoint presentations constituted trade secrets under Missouri law." *Hallmark Cards, Inc. V. Monitor Clipper Partners, LLC*, 758 F.3d 1051, 1056 (8th Cir. 2014). Later, in 2015, the Indiana Court of Appeals acknowledged that there is tension between "who is to determine whether information is a trade secret," but the court determined it was not necessary to decide at that time "whether

3

information constitutes a trade secret is a matter of law or a question of fact." *Think Tank Software Developmnet Corp, v. Chester, Inc.*, 30 N.E.3d 738, 746 (Ind. Ct. App. 2015).

In *Weins v. Sporleder*, 569 N.W.2d 16 (S.D. 1997), the South Dakota Supreme Court held that it is a question of law whether a trade secret is "information, including a formula, pattern, compilation, program, device, method, technique or process." *Id.* at 20 (citing SDCL 37-29-1(4)). The court held that the remaining subsections of the South Dakota Trade Secrets Act are questions of fact. *Id.*

After the Court cited these cases, the parties requested time to research and brief: 1) whether it is for the court or the jury to decide if a trade secret exists, and 2) if the court is to make a preliminary decision if a trade secret exists before submitting that issue to the jury for purposes of closing the court or records during trial, whether a lower burden or standard of proof applies to the Court's decision on that issue.

After receiving the written argument and authority from the parties, the Court will decide before the July 15 hearing whether the existence of a trade secret is a question of law for the Court or a question of fact for the jury, or a mixed question as is the case at least under South Dakota law. *See Weins, supra.*

There are two reasons for a trade secret determination by the Court. The Court has to make a preliminary trade secret determination on the court closure question. If the Court determines that there is no trade secret, then there is no basis for closing the records or portions of the trial. It is for this purpose that the Court has suggested that possibly the Court should consider a lower burden of proof. The Court made this suggestion given the fact that "trade secrets partake of the nature of property, the value of which is completely destroyed by disclosure." *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1983). The information claimed to be a trade secret has to be preserved for appellate review, among other concerns, thus a lower standard for finding a trade secret

4

for this purpose appears to be warranted. The briefing to be received from the parties will assist the Court in making this determination.

The second reason for the Court to make a pretrial determination of whether or not a trade secret exists is for the purpose of determining what issues get submitted to the jury. If after receiving the requested briefing, the Court concludes that the existence of a trade secret is a law question, then the Court will hear evidence on that issue on July 15. If it is instead a jury question, then evidence on whether there is a trade secret will still be heard on July 15 with regard to the Court closure issue discussed above. If the trade secret issue is a mixed issue of law and fact, then on July 15 the Court will hear evidence on the law issue with the two factual issues to be presented to the jury if the Court finds for POET on the law issue.

**III. POET's Breach of Contract Claims against Baker and Howes**

POET, Baker and Howes all move for summary judgment on POET's breach of contract claims. Howes limits his request for summary judgment to POET's allegation that he breached a noncompete clause in the agreement. For the following reasons, as discussed at the hearing, no party is entitled to summary judgment on the breach of contract claims.

The Court addressed the fact that there are no copies of employment agreements allegedly signed by Baker and Howes in the record. Even though Baker and Howes each admit they signed an employment contract, the terms of the actual contracts are not clear. According to the declaration of POET employee Rod Pierson, the signed versions of Baker and Howes' agreements were lost in the process of converting from paper personnel files to electronic files. (Doc. 106, Pierson Declaration at ¶ 13.) POET has copies of what it alleges are the unexecuted agreements. (Pierson Dec. at ¶¶ 4, 11; Exhibits A , C) Pierson avers that the unexecuted agreements Baker and Howes signed are similar in form and content to other employment agreements used by POET around the time the two men were hired. (Pierson Dec. at ¶ 6.) POET produced a copy of the executed employment agreement of James Schwartz, who was hired by POET less than a year after Baker for a similar position. (*Id.*). Pierson notes that the provisions outlining the confidentiality and

5

noncompete obligations in Schwartz's agreement are identical to those signed by Baker and Howes. (*Id* at ¶¶ 6, 12.) He believes Exhibit A attached to his declaration is identical to the version Baker signed, and that Exhibit C is identical to the version Howes signed. (*Id.* at ¶¶ 4, 11.)

To establish a breach of contract under South Dakota law, POET must prove: 1) the existence of an enforceable promise; 2) that defendants breached the contract; and 3) that POET suffered damages as a result of the breach. *See, e.g., McKie v. Huntley*, 620 N.W.2d 599, 603 (S.D. 2000). "The proponent has the burden 'to prove the contract by evidence so clear and satisfactory' that no doubt remains." *Baker v. Masco Builder Cabinet Grp., Inc.*, 912 F. Supp. 2d 814, 821 (D.S.D. 2012) (quoting *In re Estate of Neiswender*, 616 N.W.2d 83, 86 (S.D. 2000)).

Rule 1004 of the Federal Rules of Evidence provides that the "original is not required, and other evidence of the contents of a writing . . . is admissible if . . . [a]ll originals are lost or destroyed, and not by the proponent acting in bad faith." Fed R. Evid. 1004(a). Where an original is not available there are some circumstances in which secondary evidence may be offered to prove the contents of a writing. *See United States v. Standing Soldier*, 538 F.2d 196, 203 (8th Cir. 1976). In *United States v. Gerhart*, 538 F.2d 807 (8th Cir. 1976), the Eighth Circuit stated that, under Rule 1004, the court retains the authority to decide "preliminary questions such as authenticity, lack of an original and whether the proponent has presented a sufficient foundation so that a 'reasonable juror could be convinced' that the secondary evidence correctly reflects the contents of the original." *Id.* at 809. The Eighth Circuit refused to require the proponent of secondary evidence to make a "clear and convincing" showing that the secondary evidence is accurate and trustworthy in order for it to be admissible. *Id.* Instead, the Court held that the appellant's attacks on the sufficiency of the evidence and the credibility of the government's witnesses were relevant to the weight, rather than the admissibility, of the secondary evidence. *Id.* Any kind of secondary evidence is permissible once Rule 1004's conditions are met, "ranging from photographs and handwritten copies to oral testimony of a witness whose credibility is suspect." *Id.* at 809 n. 2 (quoting 5 J. Weinstein, Evidence P 1004(01), at 1004-4, 1004-5 (1975)).

During the May 31 hearing, the Court explained that more information is needed about the employment contracts in order for the Court to decide the "preliminary questions such as authenticity, lack of an original and whether the proponent has presented a sufficient foundation so that a 'reasonable juror could be convinced' that the secondary evidence correctly reflects the contents of the original." *Gerhart*, 538 F.2d at 809. A hearing will be held on this issue on July 15, and POET will be allowed to present additional evidence regarding the contracts with Baker and Howes.

**IV. POET's Motion to Sequence the Trial**

POET proposes that Counts I (defamation) and II (tortious interference with business relationships) of the Amended Counterclaim asserted by Baker and NEI be tried in a second phase of the case, after POET's claims in the Amended Complaint are decided by the jury. The Court will grant this motion.

Sequencing the trial in this case will alleviate the possibility of confusing the jury, as there will be different time frames, different types of claims and fewer parties involved in the second phase of the trial. In addition, the difficulties involved with the issue of whether to close the courtroom to the public likely will not apply during the second phase of the trial. There will be no prejudice to any party by sequencing the trial.

As explained during the May 31 hearing, if POET prevails on the trade secrets claims during the first phase of the case, it is possible that the second stage of the trial will not be needed. When the lawyers conduct voir dire at the beginning of phase one of the trial, they should include the claims in the Amended Complaint and the Amended Counterclaim, but the lawyers are directed not to say anything in front of the jury intimating that the jury may not need to consider the counterclaims if they find in favor of POET during the first phase of the trial.

**V. Baker's Motion for Summary Judgment on POET's Breach of Duty of Loyalty Claim**

The Court reserves ruling on this issue.

7

### VI. POET's Motion for Summary Judgment on Tortious Interference With Contract Claims Against NEI and Homeland

This motion is denied. POET needs to establish the existence and terms of the employment contracts with Baker and Howes before a determination can be made whether NEI or Homeland tortiously interfered with the contracts. If the Court decides the issue can be submitted to the jury, the Court finds that there are issues of fact to be decided by the jury regarding these claims, thus precluding summary judgment.

### VII. Howes and Homeland's Motion for Summary Judgment on POET's Claim of Unjust Enrichment and Motion to Limit Testimony of POET's Damages Expert, Dr. Jesse David

Howes and Homeland argue that Dr. David's damages calculations for POET's unjust enrichment claim are too speculative as a matter of law. In addition, Homeland asserts that the undisputed material facts prove Homeland was not unjustly enriched as a matter of law because its ethanol production actually decreased with the use of HU technology. POET disagrees that the facts support these propositions. The Court takes these motions under advisement. (Docs. 91 and 95.)

### VIII. Howes' Motion for Summary Judgment on POET's Breach of Non-Compete Clause

Howes argues there is no signed copy of the agreement. In addition, he contends that the non-compete clause in the exemplar provided by POET is too broad as a matter of law under South Dakota law. This motion is also denied because, as explained above, there are material issues of fact regarding the terms of the non-compete agreement.

### IX. POET's Motion to Exclude Certain Testimony of Dr. Rivers

In accordance with the Court's rulings at the May 31 hearing, Dr. Rivers will be allowed to testify about industry-wide standards or practices for protecting confidential information, but he cannot testify about whatever he happens to think should be done to protect confidential information or trade secrets aside from what are industry-wide standards or practices. The jury will decide whether POET took reasonable steps to protect the trade secrets.

Dr. Rivers may testify about the technology at issue, the ideas disclosed in the '799 patent and how it overlaps with HU technology, but he cannot testify that Baker and Howes used the patent and not DD technology to develop HU, or give any other opinions that would bolster Baker or Howes' statements.

Counsel for NEI and Baker stated that they do not intend to have Dr. Rivers testify about the counterclaims against POET.

Any other testimony from Dr. Rivers will be ruled on if there is an objection at trial.

**X. POET's Motion to Exclude Testimony of Non-Retained Experts**

POET moves to exclude any expert testimony by non-retained experts because Baker and NEI did not comply with the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2). At the hearing on May 31, POET focused on the counterclaim damages. POET believes the damage calculations prepared by Baker for the counterclaims and that the testimony of Baker and Tiffany Trottman about the damages are actually expert opinions. POET asserts that the defendants are trying "to masquerade expert opinion under the guise of fact witnesses." (Doc. 141, Reply brief at 9.)

The lawyers for Baker and NEI stated in their brief and at the May 31 hearing that they identified fact witness opinions and testimony as "expert" testimony only "out of an abundance of caution to preserve its rights and avoid unnecessary evidentiary disputes." (Doc. 119, Response Brief at 21.) They believe all the witness testimony is lay testimony admissible under Rule 701 of the Federal Rules of Evidence. The witnesses will not testify to anything other than what was revealed in their depositions.

Baker is one of the owners of NEI. This Court has allowed owners to testify as to the company's lost profits. *See, e.g., Diesel Machinery, Inc. v.. B.R. Lee Industries, Inc.*, 418 F.3d 820 (8th Cir. 2005). At the hearing, the Court directed the lawyers for Baker and NEI to provide the Court with Baker's deposition testimony and any other documentation regarding counterclaim

9

damages. The Court will rule on the admissibility of the counterclaim damage testimony and evidence after reviewing the documents. *See, e.g., US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009) (rejecting testimony by company president where "record demonstrate[d] that [he] could not identify any customer interested in buying ... a specific amount of [the product] at a specific price").

## XI. NEI's Tortious Interference Counterclaim Against POET Regarding Glacial Lakes

NEI does not oppose POET's motion for summary judgment on Count III of the Amended Counterclaim alleging that POET tortiously interfered with NEI's confidentiality and non-disclosure agreement with Glacial Lakes. Accordingly, the Court will grant POET's motion for summary judgment on the tortious interference counterclaim.

## XII. Motion to Amend/Correct Scheduling Order

The Court will have a pretrial hearing on July 15, 2019. A hearing will be held on the issues involving whether the courtroom should be closed to protect trade secrets, including any objections by the public and the media as set forth in this Court's Order issued on May 30, 2019. (Doc. 150.) In addition, POET will be allowed to present evidence regarding the contracts with Baker and Howes during the pretrial hearing on July 15.

The Scheduling Order will be amended as follows:

- On or before June 28, 2019, the parties shall submit Rule 26(a)(3) witness lists, designations of witnesses whose testimony will be presented by deposition, and trial exhibit lists.

- On or before July 12, 2019, the parties shall file objections, if any, under Rule 26(a)(3).

- On or before June 28, 2019, the parties shall file all motions in limine, with supporting authority.

- Responses to motions in limine shall be due on or before July 9, 2019.

- Replies to motions in limine responses shall be due on or before July 16, 2019.

Briefs on motions in limine shall not exceed twenty-five pages.

**IT IS ORDERED** that:

1. NEI and Baker's motion for summary judgment, doc. 79, is denied as to POET's federal and state misappropriation of trade secrets claims, POET's breach of contract claim, and POET's claim that NEI tortiously interfered with Baker's contract. The Court reserves ruling on the claim against Baker for breach of the duty of loyalty.

2. POET's motion for summary judgment, doc. 80, is denied as to the breach of contract claims against Baker and Howes and the tortious interference with contract claims against NEI and Homeland. It is granted as to Count III of the Amended Counterclaim alleging tortious interference with NEI's agreement with Glacial Lakes.

3. Howes and Homeland's motion for summary judgment, doc. 91, is denied as to POET's breach of contract claim. The Court reserves ruling on the unjust enrichment claim.

4. POET's motion to sequence the trial, doc. 82, is granted.

5. POET's motion to exclude certain testimony of Dr. Douglas Rivers, doc. 103, is granted to the extent set forth in this Order. All other objections to Dr. Rivers' testimony will be ruled on at trial.

6. The joint motion to amend/correct the scheduling order, doc. 147, is granted to the extent set forth in this Order.

7. A pretrial hearing will be held at 9:00 a.m on Monday, July 15, 2019. The pretrial conference that was scheduled for Monday, June 24, 2019, is cancelled.

8. The Court will decide before the July 15 hearing whether the existence of a trade secret is a question of law for the Court, a question of fact for the jury, or a mixed question of law and fact.

9. The Court will provide notice to the public and the media prior to the July 15 hearing so they may appear and object to any closure of portions of the trial or access to transcripts and documents. There is a mediation scheduled for June 13, 2019. If the mediation is not successful, the Court will provide a copy of this Order to the Argus Leader and the three local television stations.

10. The order of presentation on July 15 will be the presentation of evidence regarding the existence and terms of the employment contracts with Baker and Howes starting at 9:00 a.m., to be immediately followed by hearing any objections the public or the media may have concerning the requested partial closing of the courtroom and the restriction of access to documents and transcripts dealing with claimed trade secrets. Next will be a hearing on the existence of claimed trade secrets.

11. The parties shall submit briefs regarding whether it is for the court or the jury to decide if a trade secret exists for both purposes as described by the Court in part II of the above discussion. The parties also shall brief the statute of limitations defense asserted by Howes.

Plaintiffs' brief is due on June 14, Defendants' responsive briefs are due on June 26, and Plaintiffs' reply is due on June 28.

Dated this 6th day of June, 2019.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK